UNITED STATED DISTRICT COURT
SOUTHERN  DISTRICT OF NEW YORK
----------------------------------------------------------X
BRAHM PRASAD, individually and MUMBAI,
INC.,

                                 Plaintiffs

                                 COMPLAINT
   --Against –                          JURY TRIAL DEMANDED
                                 08-Cv-3818

CITY OF NEW YORK, and
JOHN DOES I through  , *individually*,[1]
MICHAEL WEINBERGER, individually,


                                 Defendants
----------------------------------------------------------X

     Plaintiffs, BRAHM PRASAD, individually and MUMBAI, INC., by their attorneys, LAW OFFICES OF AMBROSE WOTORSON, allege as follows:

     I.        INTRODUCTION

     1.       This is an action to vindicate the civil rights of plaintiffs. Plaintiffs contend that  defendants harassed and maliciously prosecuted them, maliciously abused criminal and civil process against them, violated their liberty interest rights, and maliciously violated their equal protection and commercial rights. These misdeeds are made actionable through 42 U.S.C. Sections 1981, 1983 and 1985.

     II.       JURISDICTION

     2.       This Court has jurisdiction over this action under 42 U.S.C. Sections 1981, 1983 and 1985. Venue  is proper, as the operative events occurred within this judicial district.

---

[1] The true identities of the numerous other law enforcement personnel who engaged in illegal acts against plaintiffs are unknown, and are therefore called John Does, I through IV, until they are identified.

III.　**PARTIES**

3.　MUMBAI, INC., is a "person," and it is a privately-owned company that is incorporated in the State of New York. It may sue and be sued, and its principal place of business was located at 250 West 26th Street, New York, New York, 10001 and at all relevant times, it operated as a cultural arts center located in New York County, New York. MUMBAI hosted wedding receptions, parties, fundraisers, political events and entertainment showcases. Moreover the venue served as a popular nightclub.

4.　BRAHM PRASAD, (hereinafter "plaintiff") who resides in Queens County, New York, hereby sues in on his own behalf. At all relevant times, plaintiff served as the owner of MUMBAI, INC.

5.　MICHAEL WEINBERGER, at all relevant times was the leader of the angry white residents of the neighborhood where Mumbai was located. On information and belief, he is a lawyer, who is admitted to practice law in the State of New York. He is herein sued in his individual capacity for violating and conspiring to violate plaintiffs' civil rights. His address is 236 West 26th Street, New York, New York.

6.　CITY OF NEW YORK, (hereinafter, "municipal defendant") is a state actor for 42 U.S.C. Section 1983 purposes. Defendant may sue and be sued, and its principle place of business is in New York County, New York. At all relevant times, City of New York employed the individual defendants listed herein. They are sued for having violated plaintiffs' civil rights while acting under color of state law and/or acting pursuant to its own practices, customs and policies.

7.　Defendants, "JOHN DOES I through V, individually, at all relevant times, were employed by the City of New York as inspectors, police officers, captains, and/or

2

sergeants. However, they are herein sued in their individual capacities for violating plaintiffs' protected civil rights while acting under color of state law and/or acting pursuant to practices, customs and policies of the City of New York.

IV. **FACTUAL AVERMENTS**

8. Defendants violated plaintiffs' civil and commercial rights in the following ways:

   a. Plaintiff, began the start up process for Mumbai, Inc, on or about June to October 2002, by signing a four-month lease deposit of $66,666.68, by posting signs for three (3) months about community board hearings regarding the proposed club and its applying for a liquor license.

   b. As well, construction and renovation of the venue took place between July and December 2002. The costs of this was some $500,000.

   c. The venue was officially opened on or about December 31, 2002.

   d. The venue catered to minorities, and large numbers of minority patrons attended the venue's initial events in early January 2003.

   e. Almost immediately, community protests from the largely white neighborhood where Mumbai was located erupted.

   f. Almost immediately, white residents of the neighborhood where Mumbai was located, led by a Michael Weinberger, expressed a desire to "close the [venue] down."

   g. Thereafter, the New York City Police Department began a pattern of visiting Mumbai and issuing largely bogus summonses. On

    information and belief, this was at the direct instigation and behest of Weinberger and the white residents where Mumbai was located.

h. On or about March 1, 2003, white residents of the neighborhood where Mumbai was located expressed, once again, a desire to "close the [venue] down." In fact, members of the community board advised the white residents where the venue was located, that they should make complaints via 911 and 311, write letters to local politicians, and complain to various administrative agencies.

i. The white residents, in turn, undertook a pattern of making utterly false complaints against plaintiffs.

j. Indeed, in March, April and May 2003, the New York City Consumer Affairs Department in conjunction with the New York City Police Department, began a pattern of issuing utterly false and harassing summonses to plaintiffs. To avoid the entanglement of unnecessary and expensive litigation, plaintiffs frequently agreed to pay fines, typically of no more than $100 or so to the New York City Consumer Affairs Department.

k. On or about May 30, 2003, the New York City Consumer Affairs Department padlocked and closed the venue during hours of operation, No explanation was given at the time of the closing for this actions.

l. The venue remained closed until July 30, 2003, when the New York City Consumer Affairs Department agreed to remove the padlock, so that the club could reopen.

m. On or about October and November 2003, White residents spewed thinly veiled racist invectives against Mumbai, and requested that the venue be closed.

n. Between August and September 2004, plaintiffs closed the venue for renovations which costs around $300,000 for new construction and a décor change.

o. On or about March 27, 2005, a Captain Dennis De Quatttro threatened plaintiff that he would "turn [the club] upside down."

p. In mid-April 2005, the New York City Police Department set up of a blockade in front of the venue while an event was taking place. The blockade was not a vehicle safety inspection checkpoint or a sobriety checkpoint, but it was specifically designed to deter patrons of the establishment.

q. The following weekend, during a weekly hip-hop party, the New York City Police Department set up of a blockade in front of the venue. The blockade was not a vehicle safety inspection checkpoint or a sobriety checkpoint, but it was specifically designed to deter patrons of the establishment, and to quell the "not-in-my-backyard" concerns of the neighborhood's white residents. These weekly blockades continued, unabated.

r. In July 2005 the New York City Police Department sought to close the venue on a nuisance abatement charge, but it was unsuccessful.

    s.  Upset and frustrated that the New York City Police Department was unable to effectuate a shut down, the white residents, led by Michael Weinberger, filed two civil suits against plaintiffs, and wrote letters to judges and various politicians in an effort to drive plaintiffs out of business. Those claims were ultimately unsuccessful. However, this was after plaintiffs had paid well over $100,000 to their defense attorneys. Later, the white residents falsely claimed that Mumbai was too loud, and Mumbai was closed for a week. The closure was reversed the following week.

    t.  Still, the New York City Department of Consumer Affairs at the behest of, and in conjunction with the white residents led by Michael Weinberger, instituted an utterly frivolous nuisance abatement action against Mumbai in February 2006.

    u.  Moreover, in February 2006 the New York State Liquor Authority simultaneously began to prosecute numerous cases that arose out of the largely bogus and pretextual summonses issued by the New York City Police Department. Almost all of the witnesses against plaintiffs in the State Liquor Authority prosecutions were police officers with the NYPD, and white residents from the neighborhood where Mumbai was located.

    v.  At the same time, plaintiffs' landlord undertook eviction proceedings against plaintiffs. This stemmed from the "not-in-my-backyard" concerns that had been raised by Michael Weinberger and the white

    residents. Indeed they threatened the landlord with frivolous and vexatious litigation if plaintiffs were not evicted. Predictably, the landlord capitulated to Weinberger's threats.

  w. In June 2006, the venue closed for $170,000 dollars worth of renovations. However, in September 2006, the venue was closed by the New York State Liquor Authority, after a hearing, in which the witnesses for the State Liquor Authority were primarily NYPD officers and white residents from the neighborhood where Mumbai was located.

9. Upon information and belief, defendants have undertaken similar illegal actions against other establishments that are primarily owned and operated by East Asians, or which cater to a people of Caribbean descent or to a minority "hip hop" crowd. Defendants' pattern of harassment had one goal in mind: to Mumbai drive out of business and to prevent the peaceful assembly of minorities of East Asian descent, people from the Caribbean, or a minority "hip hop" crowd who wished to openly associate with each other, for the purposes of socializing and networking. In fact, as a direct result of defendants' harassment, the venue was permanently closed down on bogus claims made by the New York City Police Department and white residents from the Neighborhood where plaintiffs operated.

10. Defendants' illegal actions were undertaken pursuant to municipal defendants' customs, practices and policies.

11. Moreover, plaintiffs' rights with respect to malicious abuse of criminal and civil process, liberty interests, and the commerce clause are clearly established, and

reasonable persons employed by the City of New York are aware of these rights, or have reasons to be so aware of these rights.

12. As a further proximate result of defendants' illegal acts towards plaintiffs, plaintiffs have suffered a substantial and permanent loss of revenue.

13. As a further proximate result of defendants' illegal actions towards plaintiffs, plaintiffs have suffered substantial and permanent impairment and damage to their good names and reputations.

14. As a further proximate result of defendants' illegal actions, the individual plaintiff, has suffered mental anguish and emotional injury.

15. Individual defendants' illegal actions were outrageous and were malicious, and were intended to injure plaintiffs, and were done with reckless indifference to plaintiffs' protected rights, entitling plaintiffs to punitive damages as against all individual defendants herein.

V. <u>CAUSES OF ACTION</u>

<u>FIRST CAUSE OF ACTION</u>

16. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

17. The defendants violated the Fourth and Fourteenth Amendments of The United States Constitution by maliciously prosecuting and by maliciously abusing criminal and quasi-criminal process against plaintiffs. These violations are made actionable through 42 U.S.C. Sections 1981, 1983 and 1985.

SECOND CAUSE OF ACTION

18. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

19. The defendants violated the Fourteenth Amendment of The United States Constitution by maliciously curtailing plaintiffs' rights to freely engage in commerce. These violations are made actionable through 42 U.S.C. Sections 1981, 1983 and 1985.

THIRD CAUSE OF ACTION

20. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

21. The defendants violated the First Amendment of the United States Constitution by curtailing rights of association and assembly. These violations are made actionable through 42 U.S.C. Sections 1983 and 1985

FOURTH CAUSE OF ACTION

22. Plaintiffs hereby repeat and reallege each allegation in each numbered paragraph above.

23. Defendants have undertaken a pattern of harassment, false arrests, false imprisonments, curtailment of commercial activities, malicious prosecutions, illegal searches and malicious abuses of process against plaintiffs because they are minorities, because they catered to people from the Caribbean and because the catered to a minority "hip hop" crowd. Defendants have not typically undertaken such actions against establishments that are not minority or owned, that do not cater to people from the Caribbean, and that do not cater to a minority "hip hop" crowd. Indeed, there were two or more nightclubs in the vicinity of Mumbai, and those night clubs, generally, have not

suffered fate similar to Mumbai's. Defendants are unable to offer any rational basis for this disparity. Thus, defendants have violated the Equal Protection Clause of the 14th Amendment. These actions are made actionable by 42 U.S.C. Section 1981, 1983 and 1985.

    VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs pray that this Court grant to him judgment containing the following relief:

    a.    Injunctive Relief;

    b.    An award of damages to be determined at the time of trial to compensate plaintiffs for mental anguish, humiliation, embarrassment, and emotional injury;

    c.    Awards of punitive damages to be determined at the time of trial as against each individual defendant;

    d.    Awards of reasonable attorney fees and the costs of this action and,

    e.    Such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
        April 21, 2008

                Respectfully Submitted,
                Law Offices of Ambrose Wotorson

                By_____/s/_____
                Ambrose W. Wotorson (AWW-2412)
                26 Court Street, Suite 1811
                Brooklyn, New York 11242