**MICHAEL WEINBERGER, Esq.**
236 WEST TWENTY SIXTH STREET
SUITE 303 NEW YORK, NEW YORK 10001
Tel. (212) 736-2624    Fax (212) 736-2604

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 2 6 2008

June 20, 2008

Honorable Judge Paul A. Crotty
United States District Court
Southern District of New York
(By Hand)

Copies Mailed By Chambers

Re:   Prasad v. City of NY
      08 Cv 3818

Dear Honorable Judge Crotty:

[Handwritten endorsement, dated June 26: The Court will treat this letter as an application to make a Fed R Civ P 12 motion to dismiss. A pre-motion conference will be scheduled in the near future. In the meantime, the defendant need not answer nor move pending the outcome of the pre-motion conference. So ordered. Paul Crotty USDJ]

In 2005-2006 I served as pro bono counsel to my neighbors who brought a nuisance lawsuit (failure to adequately soundproof, uncontrolled crowds, excessively loud music and noise, etc) against an irresponsible nightclub on our residential block in Chelsea, Manhattan.

The Honorable Rosalyn Richter, after a full hearing, found that a nuisance existed and issued an injunction that helped matters greatly. The injunction is Exhibit 1. Later, the nuisance lawsuit was voluntarily discontinued, without prejudice. Exhibit 2.

I spent about 15 hours a week on this case from late 2005 to about mid 2006. Later, 37 of my neighbors presented me with a plaque thanking me. Exhibit 3.

Now, in a case before Your Honor (captioned above) I am being sued in a bogus "civil right claim" by the nightclub. A copy of the factually inaccurate complaint is Exhibit 4. I was just served with process Monday, June 16th.

I am a private citizen who volunteered hundreds of hours of time to work on the pro bono case. I have no insurance that covers this bogus lawsuit, nor can I afford a long, drawn out litigation. If it is possible, therefore, I need to terminate this case quickly. With respect and humility, therefore, I ask The Court to please consider this request.

Specifically, I request an Order directing:

1. Plaintiff's counsel, who is being provided with a hand delivered copy of this letter and exhibits, to inform me, by Monday June 30th, if he will drop the case against me. And if he refuses,

2. That I be given 2 more weeks, until Monday July 14, to file a Motion to Dismiss this complaint and seek Rule 11 attorneys fees.

I seriously doubt that the nightclub's lawyer knows all of the facts discussed herein, otherwise he would not have brought this outlandish case.

**MEMO ENDORSED**

Perhaps this is not his fault. A different lawyer represented the club when many of these facts were described in a 2006 hearing before the Honorable Mitchell B. Nisonoff, Administrative Law Judge of the NYC Department of Consumer Affairs.

That hearing lasted 11 days (first page of Exhibit 5) and involved testimony from 22 witnesses. Id. At the conclusion of the hearing Judge Nisonoff found the club violated a 2003 agreement with the DCA and failed to adequately soundproof its premises (page 12 of Exhibit 5) which was required to "redress a history of community complaints dating from 2003." Page 15 of Exhibit 5.

Judge Nisonoff also found other violations of the earlier agreement (see, e.g., page 15) and found there were "recurring failures" by the club to exercise crowd control on the street in front of the club's entrance. Page 17 of Exhibit 5. Judge Nisonoff concluded that the club's owner had a "demonstrated unfitness" to hold a cabaret license (page 19) and suspended same for 180 days. Id. He also fined the club $13,300. Id.

Perhaps the club's new lawyer does not know this.

Perhaps he also does not know about the six administrative hearings held by the NYS Liquor Authority that resulted in guilty findings against the club. Exhibits 6 - 11. Many of these were for nuisance related violations, such as excessive noise (Exhibits 6 and 7), selling alcohol to minors (Exhibits 8 and 9) and allowing instances of "disturbance, misconduct or disorder". Exhibit 7. These six hearings resulted in fines ranging from $1,000 to $7,000.

The new lawyer may not know that in a seventh hearing the Liquor Authority finally revoked the club's license (Exhibit 12), and when the club requested a pro forma stay of that revocation (almost always granted while an appeal is pending) a unanimous ruling by Judges Buckley, Mazzarelli, Williams, Gonzalez and Sweeny, of the Appellate Division, First Department, rejected the request for a stay. Exhibit 13. No appeal was ever taken.

Because the new lawyer did not work on the seven Liquor Authority cases, or the request for a stay filed in the First Department, or the case before Judge Richter, or the case before Judge Nisonoff he may not know many of these facts.

Nor did he work on the eviction case brought by the club's landlord, which also complained of nuisance activities (Exhibit 14) and <u>shootings</u> by the club (Exhibit 15).

For these reasons I am prepared to give the new lawyer the benefit of the doubt. Indeed, he probably never heard of the club when it received one of its first warnings from a government official, then Councilmember Christine Quinn, who wrote to Mr. Prasad, the club's owner in March of 2003 complaining the club was "a nightmare for local residents," with loud music, fights, public urination, etc. Exhibit 16

It is my hope that when the new lawyer reads the facts and exhibits attached hereto he will drop this bogus "civil rights" case against me. After all, I did not revoke the club's

liquor license and I did not deny a stay of that revocation. Nor did I suspend the cabaret license.

Nor was I a party to yet another suit, brought by the NYC Police Department, which also stated the club was a dangerous nuisance. Exhibit 17

Although that suit was settled in 2005 (Exhibit 18), as the Deputy Managing Attorney of the NYC Police Department Legal Bureau stated in letters to the club's landlord (Exhibit 19) and Judge Richter (Exhibit 20), the club subsequently broke the settlement agreement and continued its nuisance activities.

Is it possible that the Police Department, the Liquor Authority, the Department of Consumer Affairs, the club's landlord, and all the witnesses and citizens named in the attached exhibits all conspired to take away the club's civil rights? Judge Richter expressly said "No" to that question on page 4 of her January 2006 ruling. Exhibit 1

Indeed, even after that finding, and after I was forced to bring the pro bono lawsuit, in March of 2006 I tried to help the club's owner and sought *mercy* for him. I wrote to the Liquor Authority and asked them not to revoke the club's license as long as it moved to a non-residential block. Exhibit 21   I also sent a copy of that letter to the DCA. Id. Unfortunately, both the DCA and the Liquor Authority rejected my request.

Some months later the club closed. I, however, did not close it. Rather, the club closed because of the nuisance activities reviewed by Judge Richter, Judge Nisonoff, the Liquor Authority and Judges Buckley, Mazzarelli, Williams, Gonzalez and Sweeny of the Appellate Division. These nuisance activities caused the loss of the liquor and cabaret licenses. I did not cause this loss.

So, after reading these facts and exhibits, the new lawyer still refuses to drop the case against me and I am forced to make a motion to dismiss this bogus case, this letter will serve as a Rule 11 Safe Harbor Notice that I will seek attorneys fees for my time, which may exceed 100 hours.

In conclusion, therefore, I respectfully request that This Honorable Court endorse the request made on page 1 of this letter. I also ask the club's new attorney to rethink his course of action and drop this case against me, which is the correct thing to do.

I thank The Court for considering this request.

With Great Respect,

Michael Weinberger

cc: all counsel